UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Magistrate No. 08-00427M-01 |
| | : | |
| v. | : | |
| | : | Mag. Judge Alan P. Kay |
| Otto B. Lucas | : | |
| | : | Status Date: August 5, 2008 |
| | : | |
| Defendant. | : | |

**<u>AMENDED GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S CONDITIONS OF RELEASE</u>[1]**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully requests that the defendant's release conditions be revoked pursuant to 18 U.S.C. § 3145(a) and the defendant be held without bond pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and 3142(f)(1)(D) as originally requested at his initial appearance.

**<u>Procedural History</u>**

In this case, the defendant was arrested on July 9, 2008, and he was presented to the court for his initial appearance on July 10, 2008. At the initial appearance, the government moved for pre-trial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(C) and 3142(f)(1)(D). The court granted the requests and scheduled a consolidated preliminary and detention hearing for July 14, 2008.

At that hearing, the government called Metropolitan Police Department ("MPD") Alvin Cardinal. Officer Cardinal testified to the following facts[2]:

On July 9, 2008, members of MPD's Narcotics and Special Investigations

---

[1] This pleading was filed to correct some clerical errors in the original motion. No substantive changes were made by the undersigned counsel.

[2] The following facts is a summary of Officer Cardinal's testimony to the best of the undersigned counsel's recollection.

Division executed a valid search warrant at 20 Mississippi Avenue, SE, Apartment No. 303, Washington, D.C. 20032. Prior to obtaining the search warrant, MPD conducted a controlled purchase of narcotics with the assistance of a confidential informant ("CI"). The CI purchased one small vial of phencyclidine ("PCP") for an amount of U.S. currency. The CI went inside the residence, and the male individual went to another room and returned to the living room area with the narcotics. At that time, the CI paid with MPD pre-recorded funds and left with the PCP. Upon leaving the residence, the CI met with MPD officers and turned over the suspected narcotics. At that time, the receiving officer indicated that the liquid inside of the vial had a smell that is consistent with the unique smell that is associated with PCP. Prior to the purchase, the CI was searched and did not possess any narcotics. After the purchase, the CI was searched, and it did not possess any narcotics other than the liquid in the vial that was purchased. The liquid and the small vial were similar in color and size to the liquid and small vials recovered during the search in this case.

The CI gave the following physical description of the individual that it purchased the PCP from: older black male with a short hair cut that lives alone. Additionally, the CI stated that it knew the individual by the name of Otto. Further, the CI identified Otto's vehicle. During the investigation, MPD officers obtained the license plate number and determined the registered owner of the vehicle. The 1989 Black BMW is registered to the defendant, and the vehicle was in front of the residence on the day the search warrant was executed.

While the officers were attempting to enter the apartment, another officer, who was providing perimeter security, observed an object being thrown from a window in the back of the residence. The officers recovered two bottles of PCP along with a false bottom can and soda bottle from the roof landing directly below the window. The defendant was the only person in the apartment and was found near the window when the officers entered the bedroom in the apartment.

The following items were recovered from the defendant's bedroom:

1. 3 digital scales
2. Approximately 140 grams of PCP in different sized vials
3. 9 containers with false compartments
4. Approximately $2,447.00
5. Gloves, quinine, sifters
6. 18 zips of marijuana
7. Numerous unused ziplock baggies and empty vials
8. Gun cleaning kit
9. Various cartridges of different caliber of ammunition
10. Documentation with the defendant's name and search warrant address.

After hearing Officer Cardinal's testimony, the court found probable cause. However, the court concluded that the defendant rebutted the presumption of dangerous and fugitivity due to the age of his criminal history and because he successfully completed one period of probation. The court placed the defendant in the High Intensity Supervision Program ("HISP") with 21 days of home confinement.

Argument

The defendant was placed in HISP on July 15, 2008. On July 18, 2008, HISP installed the electronic monitoring equipment ("EME") and determined that it was operating properly. As a matter of routine, the HISP employee installs the equipment and performs a quality assurance check after the electronic monitoring bracelet is placed on the defendant's ankle. The defendant is required to go to a place in the residence that is within the range of the EME to determine if the equipment responds appropriately by causing the green light to illuminate. Then, the defendant is required to go to an area that is out of range of the EME to determine if the red light will illuminate to indicate that the defendant is out of range. This routine check was performed and the EME was operating properly.[3] According to Pre-trial Services Agency ("PSA") Representative Byron Daniels, on July 25, 2008, another quality assurance check was conducted on the EME, and the equipment was again operating properly. Also, as of today, the vendor of the EME plans to do a final test to re-confirm that the EME was operating properly. This final

---

[3] PSA Representative Byron Daniels from HISP explained the aforementioned information, and he also stated that on July 18, 2008, he was monitoring the EME and its signals through his computer at work. The computer system indicated that the EME was installed properly and was functioning.

test was not prompted by any information that indicated that the EME was malfunctioning at any point in time.

The defendant was wearing the EME for less than a week, and he incurred numerous violations. According to PSA Representative Byron Daniels' Request for Removal Supervision Report dated August 1, 2008, the defendant has incurred 34 violations by being out of range of the EME from July 18, 2008 to July 25, 2008. The court only allowed the defendant to leave his home for the purpose of doctor's visits and case investigation. As of today, the defendant has not submitted any written verification of doctor's and/or case investigation appointments. Therefore, these violations are not justified. Additionally, on July 23, 2008, when PSA Representative Byron Daniels informed the defendant of the violations, he became belligerent and violent. The defendant stated the following on numerous occasions: "I was in the house the whole damn time." Then, the defendant stated the following two times: "You can ask my motherfucking brother." Next, the defendant jumped up and hit the PSA representative's desk extremely hard. The defendant hit it so hard that the PSA representative was prompted to notify the United States Marshals Service for assistance with the defendant. Two deputies arrived and escorted the defendant from the office.

The government reiterates to the court that the defendant is a danger to the community based upon the facts established at the preliminary hearing, the defendant's extensive criminal history which includes three felony narcotics convictions, and now, his violent behavior towards the PSA representative. Further, the government argues that the defendant is not amenable to court supervision because he cannot comply with court orders by remaining in his home. Notably, the defendant is unemployed due to a disability. Most of his violations were during

hours in which most doctor's offices are closed and most lawyers have concluded their business for the day. The defendant has not offered an acceptable, court-approved explanation for why he did not comply with the 21-day home confinement condition. Thus, the government respectfully requests that the defendant's release conditions be revoked, and he be held without bond pending the resolution of this case.

WHEREFORE, the United States respectfully moves this Court to revoke the defendant's release conditions pursuant to 18 U.S.C. § 3145(a) and detain him without bond.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By:  _____/s/_____
Angela S. George
Assistant United States Attorney
Bar No. 470-567
Federal Major Crimes Section
555 4th Street, N.W., Room 4444
Washington, D.C. 20530
202/514-7315
Angela.George@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing motion was served by ECF upon the defendant's defense counsel, Dani Jahn, Esquire, on this 5th day of August, 2008.

_____/s/_____
Angela S. George

Assistant United States Attorney